PRESTON W. HALE *vs.* FRANK P. CHENEY.

Middlesex.     March 16, 1893. — June 2, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Personal Injuries — Master and Servant — Dangerous Machine.*

In an action at common law for personal injuries received by the plaintiff while at work for the defendant, there was evidence that at the time of the accident there was in the room where the plaintiff worked a horizontal shaft, twelve feet long and about one foot above the floor, resting on bearings at each end, to which power was communicated by a belt from an upper shaft; that, to prevent longitudinal vibration of the lower shaft, an iron collar was fastened to one end of it by a set screw, the end of which projected half an inch outside the collar; that such a shaft near the floor was a common and proper method of distributing power to the machinery, and that the device to prevent vibration was in ordinary and common use, and preferable to any other, although the collar could have been secured to the shaft without a projecting screw or nut; that at the end of the shaft was an upright post, extending from the bearing in which the end of the shaft rested to the ceiling, the object of which was to hold the bearing in place, and to protect any one from getting on to the pulley, belt, or shaft; that the plaintiff, who was sixteen years old, and of ordinary intelligence, had been in the defendant's employ three months, doing odd jobs about

the shop, and at various times, amounting in all to three or four days, working on a machine; that on the day of the accident he was working on a machine the nearest part of which was five feet and four inches from the end of the shaft where the collar was; that on the other side of the shaft, and about the same distance from it, was another machine, at which there was another workman; that while at work the plaintiff had occasion to pass from his machine to hand some work to the other workman; that in so doing he went "the shortest way, regardless of the machinery, and went right up to the revolving shaft," instead of going around it as he might have done; that his trousers were caught by the set screw, and he was thrown down and injured; and that when he was caught, as he himself testified, he was not looking down at the shaft, but over it, and straight at the workman who had just taken the work from his hand, and that he did not know that the screw was there. The evidence was conflicting on the question whether this screw was visible when the shaft was revolving. There was also evidence that the plaintiff " was not a very careful boy around machinery," and " would get too near the machines, and would not apparently know where he was." *Held*, that there was no evidence that there was a breach of any duty on the part of the defendant which he owed to the plaintiff. *Held, also*, that the defendant was not bound to box the shaft, and that the fact that the collar could be secured to the shaft without a projecting screw or nut was not evidence from which the jury would be warranted in finding that the defendant was not justified in using the device.

LATHROP, J.  This is an action at common law, in which the plaintiff seeks to recover for personal injuries sustained by him while in the defendant's employ.  The case comes before us on the defendant's exceptions to the refusal of the judge who presided in the court below to rule that the plaintiff had failed to show that he was in the exercise of due care when injured, or that the defendant's machinery was unsuitably placed, defective, and dangerous.

The defendant was a manufacturer of boxes.  He occupied a room seventy-eight feet long and thirty-eight feet wide, in which were about fifteen machines.  Power was furnished from an engine in an adjoining room, connected with an overhead shaft. There was also a horizontal shaft, twelve feet long, a foot above the floor, resting on bearings at each end.  Power was communicated to this shaft by a belt from the upper shaft.  To prevent longitudinal vibration of the lower shaft, an iron collar was fastened to one end of it by a set screw, the end of which projected half an inch outside the collar.  The evidence was uncontradicted that such shafts near the floor were common and proper methods of distributing power to the machinery; and that collars with projecting screw heads or nuts, similar in all respects to that used by the defendant, were in ordinary and

common use, and were preferable to any other known device for preventing longitudinal vibration. It further appeared that a collar could be secured to a shaft without a projecting screw or nut.

At the end of the shaft was an upright post, two inches by four inches, extending from the bearing in which that end of the shaft rested to the ceiling of the room. The set screw was within three inches of the post. The object of the post was to hold the bearing in place, and to protect any one from getting on to the pulley, belt, and shaft.

The plaintiff, at the time of the accident, was a boy nearly sixteen years old, and appeared to be, as the exceptions recite, of ordinary intelligence. He had attended a commercial college, " and was a bright, intelligent boy." There was evidence that " he was not a very careful boy around machinery," and that " he would get too near the machines, and would not apparently know where he was."

The plaintiff had been in the defendant's employ three months doing odd jobs about the shop. He had worked on a machine at different times, equal in all to three or four days. On the day of the accident he was working on a machine the nearest part of which was five feet and four inches from the end of the shaft where the collar was. On the other side of the shaft, and about the same distance from it, was another machine, at which one Bernier was at work. While at work, the plaintiff had occasion to pass from his machine to hand some work to Bernier. At least, we must assume that the jury were warranted in finding this from the evidence. The plaintiff might have reached Bernier's machine by going around the shaft; instead of doing so, he went, as he testified, " the shortest way, regardless of the machinery, and went right up to the revolving shaft." His trousers were caught by the set screw, and he was thrown down and injured. He testified that, when he was caught, he was not looking down at the shaft, but over it, and straight at Bernier, who had just taken the work from his hand. He further testified that he did not know that the set screw was there. The evidence was conflicting on the question whether this screw was visible when the shaft was revolving. Without passing on the question whether there was sufficient evidence of due care on the

part of the plaintiff to warrant the submission of this question to the jury, we fail to see any evidence that there was a breach of any duty on the part of the defendant which he owed to the plaintiff.

Upon the evidence, the defendant did not owe to the plaintiff the duty of boxing the shaft. *Sullivan* v. *India Manuf. Co.* 113 Mass. 396. *Rock* v. *Indian Orchard Mills,* 142 Mass. 522. *Foley* v. *Pettee Machine Works,* 149 Mass. 294. *Tinkham* v. *Sawyer,* 153 Mass. 485. It cannot be successfully contended that the shaft, placed near the floor, with the set screw projecting, was defective or unsuitable for the purpose. The evidence was uncontradicted that such a device was in ordinary and common use, and preferable to any other. The fact that the collar could be secured to the shaft without a projecting screw or nut was not evidence from which the jury would be warranted in finding that the defendant was not justified in using the device which he had in his shop. *Goodnow* v. *Walpole Emery Mills,* 146 Mass. 261. *Carey* v. *Boston & Maine Railroad,* 158 Mass. 228.

*Exceptions sustained.*

*N. D. Pratt,* for the defendant.
*C. S. Lilley,* for the plaintiff.