JOHN MUTTER *vs.* LAWRENCE MANUFACTURING COMPANY.

Middlesex.   March 22, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., MORTON, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.   *Evidence,* Relevancy and materiality.

An employee in a cotton mill, while engaged in slipping a belt upon a rapidly revolving pulley, was injured from having his sleeve caught upon a set screw on the pulley which was unusual in its size and in the fact that it projected beyond the rim of the pulley. He was an experienced mill hand, had worked in the mill where he was injured for eleven years, had been for eighteen months engaged daily at the work which he was doing when injured, knew that the set screws in use throughout the mill varied in size and position and understood and habitually and instinctively avoided the danger attending being caught upon a set screw. When the pulley was revolving the condition of the set screw was not discernible, but when the pulley was not revolving the condition was obvious. The employee never had seen the pulley, upon which was the set screw which caused the injury, except when it was rapidly revolving, although he had had full opportunity to inspect it when it was at rest. *Held,* that the employee assumed the risk of the injury that occurred.

In an action by an employee in a cotton mill against his employer for injuries caused by the plaintiff being caught upon an alleged defective set screw of a belt pulley on a rapidly revolving shaft, it appeared that the plaintiff assumed the risk of the injury which he received. The plaintiff offered to prove that an assistant foreman in the defendant's machine shop had been directed to repair the set screw that caused the injury, and to show the reason why he had been so directed. It did not appear what the reason sought to be shown was. *Held,* that the evidence rightly was excluded.

TORT for personal injuries alleged to have been sustained by the plaintiff, an employee of the defendant in its cotton mills in Lowell, because of a defective set screw, a part of the machinery of the mills. Writ in the Superior Court for the county of Middlesex dated February 1, 1906.

There was a trial before *Stevens,* J., at which, beside the facts stated in the opinion, it appeared that the plaintiff had been for eleven years in the employ of the defendant in various capacities in its cotton mills where there was much shafting and many belts and pulleys, and for eighteen months or two years had been engaged in doing the work at which he was employed when injured. By the direction of one who was his immediate superior, the plaintiff, when injured, was in charge of several men putting belts back upon pulleys after the finishing of night work

in the mills and in preparation for the work of the next morning, and was himself putting the belt upon a rapidly revolving pulley, using a leather sleeve made for him for that purpose, when the sleeve caught on the set screw of the pulley and the plaintiff's arm was broken. The jury found that the set screw projected two inches above the hub of the pulley, and laterally one eighth of an inch beyond its rim, and there was testimony that this was unusual and, in the terms used by the defendant's head machinist, a "monstrosity." The plaintiff called as a witness one Hamilton, an assistant foreman of the defendant's machine shop, and attempted to prove by him that previous to the accident he, Hamilton, had been directed to remove the set screw which caused the injury, and to show the reasons why he had been directed to do so. There was no statement as to what were the reasons offered to be shown. The presiding judge excluded the evidence and the plaintiff excepted.

The jury, under direction of the presiding judge, returned a verdict for the defendant; and the plaintiff excepted.

*F. W. Qua & S. E. Qua,* for the plaintiff.

*F. E. Dunbar,* for the defendant.

SHELDON, J. The plaintiff contends that although he knew that pulleys were usually fastened to the shaft by means of set screws, and knew that there were set screws about the pulleys on which he was working although he had not actually seen them, and was instinctively trying to avoid them, yet he had not assumed the risk of injury from the set screw in question, because this differed from the kind ordinarily in use, in that it extended above the hub of the pulley a distance of two inches instead of the usual distance of half to three quarters of an inch, or, on large pulleys, an inch above the hub, and an eighth of an inch laterally beyond the line of the rim of the pulley instead of being wholly within that plane, — variations which might have been found on the evidence to increase materially the risk of injury from the screw when the shaft was revolving. His counsel admit in argument that if he had received his injury by coming in contact with a set screw of the kind ordinarily in use upon pulleys like the one on which he was working, he must be held to have assumed the risk of such an injury, even though he never had actually seen this particular screw.

But the difficulty with his contention is that the situation, character and projection of this screw were perfectly obvious upon inspection. Apparently the only reason that the plaintiff did not know all these circumstances was that he never had worked upon this shaft except when it was in motion, and never had taken the trouble to look at it at any other time. Indeed he testified that he never saw this screw, either before or after the accident, and knew only what had been told him about it. The screw could not be distinguished when the shaft was in rapid motion, although there was no difficulty in seeing it when the shaft was at rest. He knew that there was a set screw here ; he knew that the screws in use on the defendant's shafts were not uniform in size, length or extent of projection ; and he chose to work upon this pulley without ascertaining any of the particulars that he knew could be readily ascertained when the shaft was at rest, and could not be ascertained when it was revolving rapidly, as might have been found to be the case in *Hale* v. *Cheney*, 159 Mass. 268. The screw had been here for some years. The plaintiff was an experienced man. He had done the same work on this pulley a great many times before. He knew and had in mind the danger of getting his arm caught on this screw, and was instinctively trying to avoid it. He had had full opportunity to examine and acquaint himself with the exact circumstances, the nature, length and angle of projection of the screw which created the danger. All these circumstances were obvious if he had chosen to look for them. *Demers* v. *Marshall*, 178 Mass. 9. *Donahue* v. *Washburn & Moen Manuf. Co.* 169 Mass. 574. *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153. The case is stronger for the defendant than those cases in which the plaintiff did not know of the particular screw by which he was hurt. *Kennedy* v. *Merrimack Paving Co.* 185 Mass. 442. *Archibald* v. *Cygolf Shoe Co.* 186 Mass. 213. *Ford* v. *Mount Tom Sulphite Pump Co.* 172 Mass. 544. The defendant owed no duty to the plaintiff to make any change in this screw. *Gleason* v. *Smith*, 172 Mass. 50, 52. And the risk was none the less assumed because the character and position of this screw were more dangerous than is usually the case. *McLeod* v. *New York, New Haven, & Hartford Railroad*, 191 Mass. 389, 391. The verdict for the defendant was ordered rightly.

The exception to the exclusion of the question put to the witness Hamilton as to the reason for which he was ordered to remove this screw cannot be sustained. There is nothing to show what answer was expected, and it does not appear that the reason for such an order would be material to any issue raised in the case. It is the plaintiff's knowledge that the screw was in this place and his neglect to acquaint himself with the obvious circumstances that prevent him from recovering. When he undertook the work he was doing he assumed all the obvious risks of the business, including the risk of injury from the machinery and appliances which were then openly used. *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153. *Kenney* v. *Hingham Cordage Co.* 168 Mass. 278. *Carrigan* v. *Washburn & Moen Manuf. Co.* 170 Mass. 79. The reason why the screw was put in this place or why its removal was afterwards contemplated was unknown to him and had no bearing upon his conduct.

We find nothing, in view of our previous decisions, to help the plaintiff in any of the cases to which he has referred us.

*Exceptions overruled.*